THE MAYOR AND ALDERMEN OF JERSEY CITY

*v.*

THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

1. A grant under which it is claimed that authority is given to destroy a public right should be strictly construed.

2. A railroad corporation having authority, when public necessity requires, to change the grade of the streets crossing its tracks, will not be permitted to exercise its power in that respect except upon the same terms that the municipality within which the streets are located may exercise like power, that is, on the payment of damages to those injured by the change.

3. The board of public works of Jersey City can exercise the power conferred upon it by the legislature only when regularly convened and acting as a body.

4. A municipality having the control and supervision of the public highways within its territorial limits, may maintain a suit in equity to prevent any alteration of the streets or injury to them which will deprive the public of their use.

On final hearing on bill and answer and proofs taken before a master.

*Mr. William D. Edwards* and *Mr. John A. Blair,* for complainants.

*Mr. Benjamin Williamson,* for defendants.

VAN FLEET, V. C.

The object of this suit is to procure a decree restraining the defendants from changing the grade of Communipaw avenue at the point where the avenue crosses the railroad of the defendants. The avenue is one of the public streets of Jersey City. It is of ancient origin, having been in existence long prior to the construction of the defendants' railroad, and is an important thoroughfare over which there is a large amount of travel daily. The railroad of the defendants, at the point where it crosses the avenue, is built in a cut, and this condition of affairs made it the duty of the defendants, according to a provision of their charter, to construct and keep in repair a good and sufficient bridge over their railroad at the point where it crosses the avenue, so that public travel on the avenue should not be impeded. *P. L. of 1847, p. 133.* The defendants built a bridge at the point in question in the spring of 1864. The bridge thus became a part of the avenue. At that time the avenue was neither graded nor paved. In 1865 the grade of the avenue was established by the proper municipal authority. It was made to conform to the bridge the defendants had previously erected. Since then the avenue on both sides of the bridge has been graded in conformity to the grade established in 1865 and paved with Belgian pavement, sidewalks laid, gutters made and curbstones set. The lands adjacent to the avenue, on both sides of the bridge, have also been graded in conformity to the grade established in 1865, and improved by the erection of dwellings and other structures thereon. In August, 1883, the defendants were warned by the street commissioner of Jersey City that their bridge was so badly out of repair as to render travel over it dangerous, and they were required to put it in a proper state of repair. They thereupon built a new bridge. The new structure is three feet higher at each end than the old. The reason assigned for this change in the elevation of the bridge is, that it was necessary to increase the distance between the railroad and the bridge to prevent injury to train-hands who may be required, by the proper discharge of their duties, to be on the top of freight cars when passing under the bridge. Two lives have been lost, it is said,

in consequence of the old bridge not being at a sufficient eleva-tion.

It is obvious, at a glance, that the change the defendants pro-pose to make in the elevation of their bridge, if carried out, will, unless the grade of the street on either side of the bridge is also changed, render the avenue wholly useless as a public highway, and operate as a practical vacation of it. A rise of three feet, or even two, between the road-bed of the avenue and the floor of the bridge will render the avenue impassable and utterly de-stroy it as a public highway. By force of the charter of Jersey City, after the grade of a street has once been established and the street graded in conformity thereto, no change can be made in its grade without the consent in writing of the owners of a majority of the property to be assessed therefor, and upon payment to the owners of property injured thereby of the damages they have sustained in consequence of such change. *P. L. of 1871 p. 1122* § *58.* It is thus made apparent that if the defendants have power to make the change in the elevation of their bridge which they propose, that if they exercise it in this instance, it must in-evitably result in the imposition of serious burdens upon certain persons which they ought not to be required to bear, or, otherwise, in the complete destruction of an ancient and important public highway. In view of the fact that a change in the grade cannot be made except with the consent of those who will be injured by it, it may be taken, I think, as almost absolutely certain that no consent will be given, and that the other alternative—the de-struction of a valuable public right—must ensue. A power which is so autocratic as to invest its grantee with authority, either to impose unjust burdens on the citizen, or otherwise take away valuable public rights, should be construed with the utmost rigor, and should never be held to have been granted except it is made perfectly clear that such a grant was within the scope of the grantor's power, and that he intended to confer authority of that extraordinary nature. Chief-Justice Whelp-ley, in *Warren R. R. Co.* ads. *State, 5 Dutch. 353,* said : " Public highways ought not to be destroyed, even in part, under pretence of legislative authority, unless it be conferred either in express

words or by necessary implication. If the words are ambiguous the construction ought to be in favor of the common right of highway, not against it." Other eminent judges have expressed the same view. *Morris and Essex R. R. Co.* v. *City of Newark, 2 Stock. 352; Greenwich Township* v. *Easton and Amboy R. R. Co., 9 C. E. Gr. 217.*

The only grant to which the defendants point, as the source of their power to raise the bridge above the grade of the street, is the ninth section of their charter, a reference to which has already been made for the purpose of showing that it imposed a duty on the defendants. This section declares that it shall be the duty of the defendants to construct and keep in repair good and sufficient bridges, or passages, over or under their railroad, where any public or other road shall cross the same, so that the passage of carriages, horses and cattle on the said road shall not be impeded thereby. *P. L. of 1847 p. 133.* These words have received judicial construction. They have been construed to impose upon the defendants the duty to keep, at all times, and, under all circumstances, the public highways, at the points where they cross the railroad, in a condition fit for safe and convenient use. The duty is a continuing duty, which, in its performance, must be measured by circumstances. Thus, a bridge or passage-way, which at one time would be adequate to the public accommodation, might, at a subsequent period, from increase of business or population, be totally inadequate, and, consequently, a provision which, at one juncture, would be a discharge of the duty, would, at another, amount to its infraction. Suppose a public street in a town to have been originally laid out over the surface of the railroad track, and that, by reason of the growth of the business of the railroad at that locality, trains should pass in such quick succession as to render the street almost impassable, there can be no doubt that, under such circumstances, the railroad company could not discharge themselves from the obligation which this section imposes, except by passing the street thus obstructed under their railroad, so as to restore it to public use. Now, in such a condition of affairs, where a change of grade is absolutely indispensable to the safe and con-

·venient use of the street as a public highway, it was held that the defendants had power to alter the grade. *Central R. R. Co. of N. J.* ads. *State, 3 Vr. 220.* But, of course, such power can only be exercised in conformity to law. In no event can it be ·exercised except under the pressure of public emergency. It may be exercised to restore or save a public highway, but even then, if damages must, by law, be paid to those injured by the alteration as a condition on which alone the alteration can be made, the defendants would be bound to comply with such condition before exercising the power. These considerations make it entirely clear that the defendants' act was wrongful. It was without the least justification in public necessity, and, conse-·quently, without legal warrant.

But the defendants say that they raised the bridge with the consent of one or more of the members of the board of public works of Jersey City, which body alone has authority, by law, to make an alteration in the grade of the streets of Jersey City. If this fact were fully established it would neither justify nor excuse the act of the defendants. The members of this board have no authority whatever as individuals. It is only when they are regularly convened, and acting as a body, that they can use the powers conferred upon them by the legislature. Their individual action is without the slightest legal force. The proofs show, however, that there was no consent by even an individual member of the board. What occurred was this : At a meeting at the bridge in question, between the chief-engineer of the defendants and one or more members of the board of public works, the chief-engineer stated that the defendants wanted to raise the bridge, and that he would go on and raise it, unless he was forbidden to do so. He was not forbidden, and therefore assumed that they consented. His assumption would not have been warranted, even if he made his declaration to the board when regularly convened for the transaction of business.

The complainants are the proper parties to apply for relief in .such a case as this, and the injury which they seek to have redressed belongs to the class which this court may redress by .injunction. It is settled that a municipality, which has, by law,

the control and supervision of the public highways within its territorial limits, may maintain a suit in equity to prevent any alteration of them or injury to them which will deprive the public of their safe and convenient use. *Greenwich Township* v. *Easton and Amboy R. R. Co., 9 C. E. Gr. 217; S. C. on appeal, 10 C. E. Gr. 565.*

The complainants are entitled to an injunction requiring the defendants to reduce their bridge so as to conform to the grade of the avenue. The complainants are also entitled to costs.